## FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,

v.

## Anant BHOGAONKER, et al., Defendants.

Nos. 87 Civ. 5308 (RWS), 87 Civ. 5323 (RWS), 87 Civ. 5331 (RWS) to 87 Civ. 5334 (RWS), 87 Civ. 5337 (RWS), 87 Civ. 5339 (RWS), 87 Civ. 5341 (RWS) to 87 Civ. 5343 (RWS) and 87 Civ. 5390 (RWS).

United States District Court, S.D. New York.

Dec. 28, 1988.

See also 684 F.Supp. 793.

Bizar D'Alessandro Shustak & Martin, New York City, for plaintiff; Gayle P. Sanders, of counsel.

Simon Friedman & Associates, Hauppauge, N.Y., for defendants; Mark L. Friedman, of counsel.

## OPINION

SWEET, District Judge.

The defendants in these actions assigned as related cases ("the Limited Partners"), moved pursuant to Rule 65, Fed.R.Civ.P., virtually on Christmas Eve, to preclude the plaintiff First City National Bank & Trust Company ("First City") from selling at auction on December 30, 1988 their interests in various limited partnerships held by First City under certain security agreements. On the findings and conclusions set forth below, somewhat hastily, the motion is denied.

### The Parties

The parties to the instant motion are the Limited Partners and First City. The Limited Partners are non-resident individuals, corporations or partnerships. They purchased limited partnership interests in various tax advantaged limited partnerships in which the Forum Group, with Ronald Williams as its president ("Forum"), was the general partner.

First City is a national banking association organized under the laws of the United States with its principal place of business in New York City. It is the holder of promissory notes executed by the Limited Partners in part payment for their limited partnership interests which are held as security for the notes. It is the proposed sale of those interests at auction on December 30, 1988 which has occasioned the instant motion.

### Prior Proceedings

On July 22, 1987 First City initiated an action seeking recovery on the notes and foreclosure of its security interest against two of the limited partners. Later actions followed and were accepted as related cases. The Limited Partner defendants al-

leged in their answer that Forum violated the Securities and Exchange Act of 1934, the Racketeer Influenced and Corrupt Organization Act, the New York Limited Partnership Act and common law principles, and that First City had knowledge of the Forum fraud.

On November 28, 1988 John Aura & Company, Inc. (the "Auctioneer") notified the Limited Partners that their interest in the Limited Partnership, held by First City as security, would be sold at auction on December 30, 1988. This motion was brought on by order to show cause issued on December 22 and made returnable today. The Limited Partners also seek a temporary restraining order in the event that a decision is not reached prior to the proposed auction date.

First City is a party to another series of actions relating to a different constellation of limited partnerships in which it has sought the self help which is requested here. The opinion in those actions (the "Kinderhill Opinion") has been rendered today and is controlling here. 702 F.Supp. 468.

*The Facts*

In 1986 First City was approached with respect to providing loans to the Limited Partners to finance their purchase of the limited partnership interests at issue here. To evidence the terms of the loan, each of the Limited Partners executed and delivered to the bank promissory notes (the "Notes") and collateral agreements promising to repay the Bank. Included among the agreements that each plaintiff signed was an Assignment and Security Agreement (the "Agreement") pursuant to which the Limited Partners granted the Bank a security interest in all of their right, title and interest to the limited partnerships in order to secure payment of their indebtedness to the Bank.

Specifically, the Agreement provides that upon default, the Bank is authorized "to take any and all action which the Bank may deem necessary with respect to or otherwise deal with any of the Collateral as and completely as though the Bank were the absolute owner thereof for all purposes."

The Agreement also provides that upon default, the Bank shall have the rights and remedies of a secured party under New York law, including those under the Uniform Commercial Code ("UCC"). The principal amount of the Notes outstanding or the amount of outstanding unpaid interest has not been set forth on this motion although it is conceded that the Limited Partners are in default.

As the end of the year draws near, First City decided to sell its interest in the collateral in accordance with the Agreement and the UCC to clear its books for 1988, and to reduce the indebtedness of the Limited Partners.

According to counsel to the Limited Partners in the Kinderhill litigation, First City itself is in precarious financial condition, based on a representation of its counsel in an unrelated action, a representation which has been rebutted by affidavit. First City rejected the charge, asserted its financial good health and through counsel asserts its present action is based on a desire to exercise its rights and to clarify its accounts at year end.

It is presumed that the sale of the interest of the Limited Partners will not provide a substantial reduction of the debt of the Limited Partners but will, of course, alter the position of First City, should it bid in the interests, in the event of a liquidation or resolution of the assets of the limited partnerships.

The Limited Partners have not set forth any facts relating to the effect of the proposed auction on the tax status of the limited partnerships and on this record it must be assumed that no injury to the Limited Partners will be suffered in this regard.

*Conclusions*

The discussion, reasoning and authorities set forth in the Kinderhill Opinion issued this date are hereby adopted as applicable on this motion.

In the absence of irreparable injury and a balance of hardship tipping to the Limited Partners, their motion for preliminary injunction, belatedly brought, is denied in

haste in order to permit a further review should it be deemed appropriate. Under these circumstances the requested temporary restraining order is also denied.

It is so ordered.